UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | Date | April 29, 2026 |
|---|---|---|---|

| Title | ***Ariana Aguilar, et al. v. Laboratory Corporation of America*** | Page | 1 of 13 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, CHIEF UNITED STATES DISTRICT JUDGE

| DEREK DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   IN CHAMBERS—ORDER RE PLAINTIFFS ADRIANA AGUILAR'S AND KARINA ESPITIA'S MOTION TO REMAND [54]**

Plaintiffs Adriana Aguilar and Karina Espitia have filed a motion to remand this consolidated action to state court based on Defendant Laboratory Corporation of America's ("LabCorp") failure to meet the jurisdictional minimum under the Class Action Fairness Act of 2005 ("CAFA"). [Doc. # 54-1 ("MTR").] The MTR is fully briefed. [Doc. ## 55 ("Opp."), 56 ("Reply").] Having duly considered the parties' written submissions, the Court **DENIES** the motion for the reasons set forth below.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

On September 26, 2022, Plaintiff Aguilar filed a Class Action Complaint in Los Angeles County Superior Court against Defendant Laboratory Corporation of America ("LabCorp"). The Complaint alleged the following state-law causes of action under the California Labor Code: (1) failure to pay for hours worked at minimum wage; (2) failure to pay overtime wages; (3) failure to include additional remuneration in overtime wages; (4) failure to pay meal period wages; (5) failure to authorize or permit rest periods; (6) failure to pay rest period wages; (7) failure to indemnify employees for employment-related losses or expenditures; (8) failure to pay accrued Paid Time Off ("PTO"); (9) failure to timely pay wages; (10) failure to provide complete and accurate wage statements; and (11) failure to timely pay all earned wages and final paychecks due at time of separation. [Doc. # 1-1 ("*Aguilar* Compl.").] Aguilar also alleged a cause of action for (12) unfair business practices in violation of California Business and Professions Code § 17200 *et seq. Id.*

On December 14, 2022, LabCorp removed this action to the Central District of California asserting jurisdiction under CAFA. [Doc. # 1 ("*Aguilar* NOR").] On March 2, 2023, the *Aguilar* action was deemed related to the action entitled *Jose Bermejo v. Laboratory Corporation of America*, No. CV 20-5447-DMG (SKx) (C.D. Cal.). [Doc. # 18.] On July 18, 2023, the Court

---

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk DD |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | | Date | April 29, 2026 |
|---|---|---|---|---|

| Title | ***Ariana Aguilar, et al. v. Laboratory Corporation of America*** | Page | 2 of 13 |
|---|---|---|---|

stayed *Aguilar* pending the resolution of *Bermejo*.  [Doc. # 34.]  The Court entered final judgment in *Bermejo* on January 31, 2025.  *Bermejo*, Doc. # 91.  As relevant to the motion at hand, the Court previously denied LabCorp's motion to remand in *Bermejo* on November 2, 2020.  *Bermejo*, Doc. # 27.  The Court lifted the stay in *Aguilar* on January 16, 2025.  [Doc. # 38.]

Aguilar filed a First Amended Complaint on February 14, 2025.  [Doc. # 39 ("*Aguilar* FAC").]  The Court approved the parties' stipulation to have the *Aguilar* FAC serve as the operative complaint.  [Doc. # 42.]  In the FAC, Aguilar omitted her ninth cause of action for failure to timely pay wages.  *See Aguilar* FAC.  On April 9, 2025, the Court consolidated *Aguilar* and *Karina Espitia v. Laboratory Corporation of America,* No. CV 23-1942-DMG (SKx).  [Doc. # 43.]  *Espitia* was administratively closed and all papers filed and served in *Espitia* were deemed to be filed in and adopted as part of the record in the consolidated *Aguilar* case.[1]

## II.
## LEGAL STANDARD

CAFA affords district courts jurisdiction "over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs*." Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)).  Under 28 U.S.C. section 1441(a), an action may be removed from a state court to a federal district court if the latter would have had original jurisdiction over the action had it been filed there.

## III.
## DISCUSSION

**A.      Diversity and Class Size**

Aguilar and Espitia do not dispute that they are each diverse from LabCorp.  Aguilar is a resident and citizen of California.  *Aguilar* FAC at ¶ 4.  Espitia is a resident and citizen of California. *Espitia* Compl. at ¶ 15.  LabCorp is incorporated in Delaware and its principal place of business is in North Carolina.  *Aguilar* NOR at ¶¶ 16–17; *Espitia* NOR at ¶ 15.

---

[1] Plaintiffs Aguilar and Espitia did not file a consolidated complaint.  Instead, the parties separately address subject matter jurisdiction for each complaint.  The parties do not address whether the Court should aggregate the amount in controversy for the consolidated action.  The Court need not resolve this question, however, because it finds that the amount in controversy is sufficient in each complaint.  For the sake of clarity, the Court will refer to the consolidated action as "Consolidated Action" and filings prior to consolidation as "*Aguilar*."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | Date | April 29, 2026 |
|---|---|---|---|

| Title | ***Ariana Aguilar, et al. v. Laboratory Corporation of America*** | Page | 3 of 13 |
|---|---|---|---|

Aguilar and Espitia also do not dispute that class size satisfies CAFA. The *Aguilar* class is comprised of current and/or former employees who worked for LabCorp in California in the position of Service Representative/Courier or other positions with the same or similar job functions between April 20, 2016 to March 21, 2023. *Aguilar* FAC at ¶ 58. LabCorp employed approximately 3,743 non-exempt employees in the *Aguilar* class. Decl. of Bing Chun Lin ISO MTR Opp. ("Chun Lin Decl. ISO MTR Opp.") at ¶ 3 [Doc. # 55-1].

The *Espitia* class is comprised of current and former non-exempt employees who worked for LabCorp in California, during the four years before the filing of the Complaint through the time of class certification. *Espitia* Compl. at ¶ 25. The *Espitia* Complaint was filed on November 30, 2022. *Id.* LabCorp employed approximately 4,425 non-exempt employees in California between November 30, 2018 and March 8, 2023, and 2,771 non-exempt employees in California between March 26, 2022 and March 8, 2023. *Espitia*, Doc. # 1-2.[2]

**B.      Amount in Controversy**

LabCorp claims that the amount in controversy in *Aguilar* is $80,641,389 or, alternatively, $22,245,208. Opp. at 24–25.[3] For Espitia, LabCorp claims the amount in controversy is $97,360,328 or, alternatively, $23,362,789. *Id.* Plaintiffs argue LabCorp (1) failed to prove the amount in controversy by a preponderance of the evidence and (2) relied on unreasonable assumptions in calculating the amount in controversy. MTR at 9–15.

A notice of removal need not contain evidentiary submissions. *Arias v. Residence Inn*, 936 F.3d 920, 925 (9th Cir. 2019). It "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). When the plaintiff contests, or the court questions, the defendant's allegation, evidence establishing the amount is required. *Id.* "Both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Id.* The party seeking removal bears the burden. *Ibarra*, 775 F.3d at 1197. The Court "may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation removed).

LabCorp is not obligated to present evidence of its own ultimate liability. *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). It can "rely on 'a chain of reasoning that includes

---

[2] To the extent some members of these putative classes overlap, the class size is still well above 100.

[3] All page citations herein refer to the page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | Date | April 29, 2026 |
|---|---|---|---|

| Title | ***Ariana Aguilar, et al. v. Laboratory Corporation of America*** | Page | 4 of 13 |
|---|---|---|---|

assumptions' to calculate the amount in controversy." *Id.* (quoting *Arias*, 936 F.3d at 925) (internal quotation marks and citation omitted). Although these assumptions "cannot be pulled from thin air . . . , they can be founded on allegations of the complaint and do not necessarily need to be supported by evidence." *Id.* (internal quotation marks and citations removed). This Court must determine if LabCorp's rationale is reasonable. *Id.* (citing *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)).

Plaintiffs challenge the violation rates used in LabCorp's calculation of the amount in controversy. But in a wage and hour case, such as this one, "it makes little sense to require a CAFA defendant to introduce evidence of the . . . *alleged* violation rate . . . . A CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Perez*, 131 F.4th at 808. If the defendant's interpretation of the complaint is unreasonable, the defendant must provide some other justification, such as evidence of the violation rate used. *Id.* at 809 (citing *Ibarra*, 775 F.3d at 1198). If the defendant's interpretation of the complaint is reasonable, the defendant is not required to submit evidence. *Id.* (citing *Ibarra*, 775 F.3d at 1198). Moreover, if one possible violation rate is reasonable, this does not "automatically render" other possible violation rates unreasonable. *Id.* at 810. If the plaintiff believes a particular violation rate is "*more* reasonable" than another, she may argue so, and the Court will "weigh[] the evidence and arguments" to decide which assumption is "more appropriate." *Id.* (citing *Jauregui*, 28 F.4th at 996).

### 1.    *Aguilar* Class

**The Number of Class Members**

In support of its notice of removal, LabCorp provided a declaration from Joseph Martin, a Senior Human Recourses Information Management Analyst at LabCorp. Decl. of Joseph Martin ISO *Aguilar* NOR ("Martin Decl.") [Doc. # 1-2]. According to the declaration, Martin reviewed personnel information including wage rates and dates of hire and separation related to the putative class. *Id.* at ¶ 2.

Between September 26, 2018 and March 26, 2022, LabCorp employed approximately 3,743 non-exempt employees in California. *Id.* at ¶ 5. These 3,743 employees worked approximately 319,947 workweeks (182,851 pay periods). *Id.* The average hourly wage rate for these non-exempt employees was approximately $23.73 during this period. *Id.*

Between September 26, 2019 and March 26, 2022, LabCorp's non-exempt California workforce worked approximately 283,568 workweeks. *Id.* at ¶ 7. During this period,

---

CV-90                                **CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk DD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 22-9061-DMG (SKx)** | Date | April 29, 2026 |

| | | | |
|---|---|---|---|
| Title | ***Ariana Aguilar, et al. v. Laboratory Corporation of America*** | Page | 5 of 13 |

approximately 1,113 non-exempt employees were either terminated or resigned from employment with LabCorp. *Id.* The average final hourly wage rate for these 1,113 employees was approximately $23.72. *Id.*

Between September 26, 2021 and March 26, 2022, LabCorp employed approximately 2,796 non-exempt employees in California. *Id.* at ¶ 8.

Plaintiffs argue LabCorp's class assessments are "approximations" and are insufficient because they do not include "supporting evidence, citations to records reviewed, nor calculations shown." MTR at 10–11; *see also* Reply at 6. The number of employees in a class is "most easily determined by examining the defendant's employment records." *Perez*, 131 F.4th at 808. A defendant is therefore expected to introduce evidence of that number. *Id.* A declaration of an applicable LabCorp Human Resources employee reporting total sums derived from employment records is sufficient. *See id.* In *Perez*, the Ninth Circuit found "a declaration from a company representative showing the number of nonexempt employees it employed during the class period" was appropriate and in accordance with *Arias*. *Id.* at 809.

## Unpaid Minimum and Overtime Wages

Aguilar alleges LabCorp failed to pay minimum and overtime wages for all hours worked due to its "policies, practices, and/or procedures," which include its requirement that employees undergo a "lengthy multistep process before clocking in at the start of their shifts and when returning from their meal periods." *Aguilar* Compl. at ¶¶ 15, 19. The process required employees to enter the drugstore, walk to the back area using a code to gain access, turn on the lights and computer (at opening), wait in line behind one to two employees to clock in using a landline telephone, and use the landline telephone to clock in which would take about two to three minutes in total. *Id.*

Based upon these allegations, LabCorp estimates each violation totaled two to three minutes. Opp. at 13. Because the alleged violations occurred at the start of the shift, and when returning from a meal period, a 100% violation rate would be twice per day each workday (five days per workweek), which totals 10 instances or 20-30 minutes of time per employee each workweek. *Id.*

LabCorp first proposes an estimate of 10 minutes of regular minimum wage pay and 10 minutes of overtime pay each workweek. Opp. at 13. Assuming the process takes two minutes, 10 minutes of violations translates to five violations. By the nature of overtime pay, an employee logically cannot be owed both minimum wage and overtime wage for the same work. The five

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | Date | April 29, 2026 |
|---|---|---|---|

| Title | ***Ariana Aguilar, et al. v. Laboratory Corporation of America*** | Page | 6 of 13 |
|---|---|---|---|

instances of minimum wage pay and five instances of overtime pay cannot overlap, and therefore LabCorp's combined calculation assumes a 100% violation rate (10 instances per workweek).

The Court finds LabCorp's alternative calculation of two minutes of overtime pay each workweek to be more reasonable. By the same reasoning, the calculation would therefore assume a 60% violation rate (five instances of minimum wage + one instance of overtime = six instances per workweek). Contrary to Plaintiffs' argument, LabCorp need not prove overtime is available— *Plaintiff* is the one who alleged a claim for overtime pay and placed overtime at issue. *See* MTR at 11.

Accordingly, LabCorp's reasonable calculations are as follows:

| Claim/Damage | Calculation | Amount |
|---|---|---|
| Minimum Wage | 10 minutes of minimum wage per workweek x 319,947 workweeks = 3,199,470 minutes<br><br>3,199,470 minutes x $11.00/hour = $586,569[4] in minimum wage | $586,569 |
| Liquidated Damages for Minimum Wage | *See supra*. | $586,569 |
| Overtime | 2 minutes of overtime per workweek x 319,947 workweeks = 639,894 minutes<br><br>639,894 minutes x $23.73 average hourly rate x 1.5 overtime premium = $379,617 in overtime | $379,617 |
| **TOTAL:** | | **$1,552,755** |

*See* Opp. at 13–14, 24.

**Failure to Authorize or Permit Rest Breaks**

Aguilar alleges LabCorp "often" employed non-exempt employees for shifts of more than three and one half hours. *Aguilar* Compl. at ¶ 28. Aguilar claims LabCorp "failed to authorize or permit all legally required and compliant rest periods . . . due to [LabCorp's] policies, practices,

---

[4] LabCorp calculates $586,569 instead of $586,569.50. *See* Opp. at 13–14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | Date | April 29, 2026 |
|---|---|---|---|

| Title | ***Ariana Aguilar, et al. v. Laboratory Corporation of America*** | Page | 7 of 13 |
|---|---|---|---|

and/or procedures including, but not limited to: failing to authorize or permit [Aguilar] and similarly situated employees to take a rest period for every four [] hours worked or major faction thereof." *Id.* at ¶ 30. In addition, Aguilar alleges LabCorp "maintained a policy, practice, and/or procedure of failing to compensate Plaintiff and similarly situated employees" for its failure to provide a rest period. *Id.* at ¶ 31. An employee is entitled to one hour of pay at the regular rate of compensation for each workday the employer did not authorize or permit the required rest period. *Id.* at ¶ 29 (citing California Labor Code § 226.7).

Plaintiffs argue LabCorp assumes an unreasonable 100% violation rate of five times per workweek for rest period violations. MTR at 9; Reply at 7. LabCorp proposes, however, a 60% violation rate of three times per workweek, not 100%. Opp. at 15. Utilizing 319,947 workweeks and a 60% violation rate, the claim totals $22,777,026 (319,947 workweeks x $23.73 average regular rate x three violations per workweek). Opp. at 15. In the alternative, LabCorp proposes $7,592,342 calculated with a violation rate of one time per week (319,947 workweeks x $23.73 average regular rate x one violation per workweek) or **$3,796,171** calculated off of the same violation rate of one time per week for only half of the workweeks (159,973.5 workweeks x $23.73 average regular rate x one violation per workweek). A violation rate of one time per week amounts to a 20% violation rate. A 10-20% violation rate based upon an alleged "policy and practice" is reasonable. *See Salatino v. Am. Airlines, Inc.*, 719 F. Supp. 3d 1094, 1103 (S.D. Cal. 2024) (collecting cases where courts find similar violation rates reasonable when a Complaint alleges a "policy and practice").

Plaintiffs argue LabCorp has not shown how many shifts qualified for rest periods. MTR at 12. A declaration from a Senior Director of People Analytics at LabCorp reports that, between September 26, 2018 and March 26, 2022, LabCorp employed approximately 3,743 non-exempt employees who worked at least approximately 689,196 shifts that were equal to or longer than six hours. Chun Lin Decl. ISO MTR Opp. at ¶ 3. A shift of six hours or more necessarily qualifies for a rest period. Accordingly, the number of qualifying shifts is high enough for LabCorp to reasonably assume a 20% violation rate for at least half of the qualifying workweeks.

## Failure to Provide Accurate Wage Statements

Aguilar alleges LabCorp failed to provide class members an accurate itemized wage statement "due to their policies, practices, and/or procedures, including, but not limited to: (1) failing to show the total hours worked by the employees; and/or (2) failing to show all applicable hourly rates in effect during the pay period." *Aguilar* Compl. at ¶ 50. Aguilar's paystubs did not show the total hours worked and her final paystub did not show applicable hourly rates. *Id.* In addition, "derivative of Plaintiff's claims above," LabCorp failed to provide accurate wage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | Date | April 29, 2026 |
|---|---|---|---|

| Title | *Ariana Aguilar, et al. v. Laboratory Corporation of America* | Page | 8 of 13 |
|---|---|---|---|

statements that included the wages due pursuant to her other claims ("including minimum wages, overtime wages, overtime wages at the proper overtime rate, meal period premium wages at the proper regular rate, rest period premium wages, and rest period premium wages at the proper regular rate"). *Id.* at ¶ 51.

For wage statement violations, California Labor Code provides statutory penalties ($50 or actual damages for the initial pay period and $100 per employee for each violation, not to exceed $4000). Cal. Lab. Code § 226(a), (e)(1). LabCorp estimates $11,076,000 ($4,000 x 2,769 employees) assuming wage statements were inaccurate in the year preceding the filing of the Complaint. Opp. at 19. This assumes a 100% violation rate where all employees in the applicable time period received at least 40 inaccurate wage statements. *See* MTR at 13–14. In the alternative, LabCorp proposes a 20% violation rate. Opp. at 19 n.6. This places **$2,212,000** in controversy ($4,000 x 20% of 2,769 employees). A 20% violation rate based upon a "policy or practice" is reasonable. *See Salatino*, 719 F. Supp. 3d at 1103.[5]

**Failure to Pay Wages at Separation**

Aguilar alleges "as a result of the aforementioned violations of the Labor Code," class members were not paid their final wages in a timely manner. *Aguilar* Compl. at ¶ 53.

For failures to pay wages at separation, California Labor Code provides a statutory penalty from the day the wages were due until they were paid for a maximum of 30 days. Cal. Lab. Code § 203. Assuming the statutory maximum of 30 days and wages for a shift length of eight hours per workday, this places $6,336,086 in controversy (1,113 terminated employees x 30 days x eight hours x $23.72 per hour). Opp. at 20. Aguilar argues it is unreasonable for LabCorp to assume the 30 day maximum and an eight hour shift for all employees, but does not provide any reasonable alternative. MTR at 13–14. LabCorp proposes, in the alternative, lower calculations based on a shift length of four hours ($3,168,043) or two hours ($1,584,021). *Id.*

Because the failure to pay wages at separation claim is derivative of the minimum wage and overtime claims, it is reasonable to assume a shift length that would encompass both the morning and lunch break check-ins. Moreover, the 30-day maximum would be easily met as Aguilar alleges a pattern or practice of continuous violations over an extended period of time.

---

[5] Although this claim is derived, at least in part, from Aguilar's minimum wage and overtime claims, the Court will not apply the same violation rate (60%). The violations are not measured by the same method. The minimum wage and overtime claims are measured by 10 possible violations per workweek, while wage statement damages are calculated per employee.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | | Date | April 29, 2026 |
|---|---|---|---|---|

| Title | *Ariana Aguilar, et al. v. Laboratory Corporation of America* | Page | 9 of 13 |
|---|---|---|---|

Accordingly, LabCorp's estimate based on a four-hour shift length, **$3,168,043** (1,113 terminated employees x 30 days x four hours x $23.72 per hour), is reasonable.

**Failure to Pay Vested PTO Wages at Separation**

Aguilar alleges LabCorp "employed policies and procedures which insured [class members] were not properly paid accrued and vested vacation time and/or PTO upon termination[.]" *Aguilar* Compl. at ¶ 45. Between September 26, 2019 and March 26, 2022, 1,113 non-exempt employees were either terminated or resigned from employment with LabCorp. Martin Decl. at ¶ 7. Aguilar did not allege any facts as to length of employment before resignation or termination or the amount of accrued PTO. Accordingly, LabCorp assumed a rate of five hours of accrued and vested PTO which places $132,001 in controversy at a 100% violation rate (5 hours x $23.72 final rate of pay x 1,113 separated employees). Opp. at 17.

Plaintiffs dispute LabCorp's use of five hours of accrued PTO but do not provide any reasonable alternative. MTR at 13. The Court agrees, however, that LabCorp has not met its burden in showing a 100% violation rate (all employees) is reasonable. In the alternative, LabCorp proposes a 20% violation rate which amounts to **$26,329** (five hours x $23.72 final rate of pay x 20% of 1,113 separated employees). Opp. at 17. The Court finds this estimate is reasonable.

**Failure to Indemnify Necessary Business Expenses**

Aguilar alleges LabCorp "employed policies, practices and/or procedures of impermissibly passing business-related expenses" to class members. *Aguilar* Compl. at ¶ 39. These policies, practices, and/or procedures included requiring class members to do the following without reimbursement: (1) download an application onto their personal cell phones and to use it to check emails, assignments, and daily tasks; (2) accept daily calls on personal cell phones from supervisors and coordinators about daily issues; and (3) accept daily calls on personal cell phones at the start of the shift regarding questions related to COVID-19. *Id.* Aguilar requests the costs incurred to use or purchase personal cell phones to comply with these policies, practices, and/or procedures. *Id.* at ¶ 40.

LabCorp proposes an estimate of $10 per workweek ($2 per workday) which results in $2,835,680 (283,568 workweeks x $10 per workweek). Opp. at 16. Plaintiffs argue this assumes a 100% violation rate and $10 per workweek is too high as monthly cell phone plans may be as low as $10 per month. MTR at 13. In the alternative, LabCorp proposes $2 per month which would place **$141,784** in controversy (283,568 workweeks x $0.50 per workweek). Opp. at 16. The Court finds LabCorp's calculation in the alternative to be reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | Date | April 29, 2026 |
|---|---|---|---|

| Title | ***Ariana Aguilar, et al. v. Laboratory Corporation of America*** | Page | 10 of 13 |
|---|---|---|---|

### Failure to Include Additional Remuneration

Aguilar challenges LabCorp's calculation of remuneration for a "PSC Incentive" provided only to phlebotomists for its failure to include additional remuneration claim (overtime) and her rest period claim. *Aguilar* Compl. at ¶ 104; *see also Aguilar* NOR at ¶¶ 32–34, 41–42. LabCorp elected not to include Aguilar's additional remuneration claim and did not include remuneration in its rest period claim estimate. *See* Opp. at 15–16, 21 n.7. Because the amount in controversy requirement is satisfied without accounting for this additional remuneration, the Court need not consider it or Aguilar's fourth and sixth causes of action by the same reasoning.

### Failure to Timely Pay Wages

Because the amount in controversy requirement is satisfied without accounting for Aguilar's failure to timely pay wages claim, the Court need not address it.

### Attorney's Fees

Similarly, the amount in controversy requirement is satisfied without accounting for attorney's fees. The Court therefore does not address the parties' arguments as to the size of the fees at stake.

### Final Calculation

In sum, LabCorp's calculation of the amount in controversy for *Aguilar* is as follows:

| Cause of Action | Estimated Amount in Controversy |
|---|---|
| Unpaid Minimum and Overtime Wages | $1,552,755 |
| Failure to Authorize or Permit Rest Breaks | $3,796,171 |
| Failure to Provide Accurate Wage Statements | $2,212,000 |
| Failure to Pay Wages at Separation | $3,168,043 |
| Failure to Pay Vested PTO Wages at Separation | $26,329 |
| Failure to Indemnify Necessary Business Expenses | $141,784 |
| **TOTAL:** | **$10,897,082** |

Finally, Plaintiffs argue LabCorp uses claims that settled in *Bermejo* to inflate the amount in controversy. Reply at 8–10. In response to the Court's order to show cause ("OSC") why

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | Date | April 29, 2026 |
|---|---|---|---|

| Title | ***Ariana Aguilar, et al. v. Laboratory Corporation of America*** | Page | 11 of 13 |
|---|---|---|---|

*Aguilar* should not be stayed pending *Bermejo*, LabCorp reported *Bermejo* involved an approximate 10% overlap between the two classes. [Doc. # 33 at 3.] Aguilar did not file a response to the OSC. *See* Doc. # 34. With exceptions, "[w]hen a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Faulk v. JELD-WEN, Inc.*, 159 F.4th 618, 620 (9th Cir. 2025) (quoting *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025)). Assuming the *Bermejo* settlement can affect the amount in controversy, an overall 10% reduction still satisfies CAFA's jurisdictional requirement **($9,807,373)**.

### 2.   *Espitia* Class

In support of its notice of removal, LabCorp provided a declaration from Bing Chun Lin, Director of People Analytics at LabCorp. *Espitia*, Decl. of Bing Chun Lin ISO NOR ("Chun Lin Decl. ISO NOR") [Doc. # 1-2]. According to the declaration, Chun Lin reviewed personnel information, including wage rates and dates of hire and separation, related to Espitia and the putative class. *Id.* at ¶ 2.

Between November 30, 2018 and March 8, 2023, LabCorp employed approximately 4,425 non-exempt employees in California. *Id.* at ¶ 5. These employees worked approximately 408,219 workweeks (approximately 204,109 pay periods). *Id.* During this period, the average hourly rate for the non-exempt employees was $27.77. *Id.*

Between November 30, 2019 and March 8, 2023, LabCorp's non-exempt employees in California worked approximately 357,466 workweeks. *Id.* at ¶ 6. During this time period, at least 969 non-exempt employees were terminated or resigned from employment at LabCorp. *Id.* The average final hourly wage rate for the 969 non-exempt terminated or resigned employees was approximately $28.89. *Id.*

Between March 26, 2022 and March 8, 2023, LabCorp employed approximately 2,771 non-exempt employees in California. *Id.* at ¶ 7.

Contrary to Plaintiffs' argument that Chun Lin's declaration is "pure, unsupported speculation," a declaration of an applicable LabCorp Human Resources employee reporting total sums derived from employment records is adequate. MTR at 14; *see Perez*, 131 F.4th at 808.

//
//
//

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | Date | April 29, 2026 |
|---|---|---|---|

| Title | *Ariana Aguilar, et al. v. Laboratory Corporation of America* | Page | 12 of 13 |
|---|---|---|---|

### Failure to Provide Meal Periods

Espitia alleges LabCorp had a "consistent policy" of failing to provide a 30-minute uninterrupted meal period for work periods of more than five hours per day, and a second 30-minute uninterrupted meal period for work periods of more than 10 hours per day. *Espitia* Compl. at ¶¶ 5, 7, 20, 29. Generally, Espitia alleges LabCorp utilized "consistent policies and procedures" in violation of the applicable California Labor Code and California Industrial Welfare Commission Wage Order. *Id.* at ¶ 2.

LabCorp proposes a violation rate of one missed meal period per week (20%) which places **$11,336,214** in controversy (408,218 workweeks x $27.77 average regular rate x 1 meal period). Opp. at 23. Contrary to Plaintiffs' argument, this is not a 100% violation rate. MTR at 14. Based on the Complaint's allegation of a "consistent policy," a 20% violation rate is reasonable. *Salatino*, 719 F. Supp. 3d at 1103. Applying LabCorp's proposed 20% violation rate, this claim alone amounts to over $11 million—well above the CAFA jurisdictional minimum.

Because the amount in controversy requirement is satisfied with Espitia's failure to provide meal periods claim alone, the Court need not address the parties' arguments as to the remaining claims (failure to provide rest periods, failure to pay overtime wages, failure to timely pay wages, failure to pay wages at separation, failure to provide accurate wage statements) and the attorney's fees at stake.

In addition, LabCorp reported an approximately 10% overlap between the *Bermejo* class and the *Espitia* class. *Espitia*, Doc. # 22 at 3. *Espitia* was removed from state court well before *Bermejo* settled. Even assuming the *Bermejo* settlement could affect the amount in controversy, a 10% reduction of the foregoing amount in controversy still satisfies CAFA's jurisdictional requirements (**$10,202,592**).

### C.      Attorney's Fees

Because the Court denies Plaintiffs' motion to remand, Plaintiffs' request for attorney's fees is also **DENIED**. MTR at 16–17.

**IV.
CONCLUSION**

In light of the foregoing, the Plaintiffs' motion to remand is **DENIED**. Plaintiffs shall file a Consolidated Complaint by **May 20, 2026**. LabCorp's response to the Consolidated Complaint

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9061-DMG (SKx)** | Date | April 29, 2026 |
|---|---|---|---|

| Title | *Ariana Aguilar, et al. v. Laboratory Corporation of America* | Page | 13 of 13 |
|---|---|---|---|

is due within 21 days after the filing of the Consolidated Complaint.  The parties shall file an amended Joint Fed. R. Civ. P. 26(f) report in light of the Consolidated Complaint by **June 15, 2026**.  The amended joint report must include a completed worksheet (Exhibit A) as set forth in the Court's March 2, 2023 Order.  *See* Doc. # 21.


**IT IS SO ORDERED.**

---

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk <u>DD</u> |
|---|---|---|